**FIREMEN'S INS. CO. OF NEWARK, N. J., v. KING, Insurance Com'r.**

No. 456.

District Court, E. D. South Carolina.

March 11, 1929.

Ashley C. Tobias, Jr., and Benet, Shand & McGowan, all of Columbia, S. C., for plaintiff.

John M. Daniel, Atty. Gen. of South Carolina, R. E. Whiting, of Columbia, S. C., and Cordie Page and J. Ivey Humphreys, Asst. Attys. Gen., of South Carolina, for defendant.

ERNEST F. COCHRAN, District Judge.

The plaintiff brought its bill of complaint for an injunction against the defendant as insurance commissioner to enjoin him from enforcing an order revoking its license to do business in the state. This court granted an interlocutory injunction. In granting the interlocutory injunction, it was held that as it was granted on the ground that a prima facie showing had been made that the insurance commissioner acted in excess of his power, that is, without authority of law, and as the injunction was not issued suspending or restraining the enforcement, operation, or execution of any statute by restraining the action of an officer of the state in the enforcement or execution of a statute or in the enforcement or execution of an order made by an administrative board or commission acting under and in pursuance of a statute of the state, upon the ground of the *unconstitutionality of such statute or order*, it was not necessary that the application for an interlocutory injunction should be heard before three judges as required by section 266 of the Judicial Code (28 USCA § .380), but that the District Judge was competent to issue the injunction. The defendant has now made a motion to dismiss the bill of complaint. This motion involves the merits, but as the interlocutory injunction could be issued by the District Judge, it follows from the terms of the Judicial Code that it will not be necessary for three judges to be called in to hear the motion to dismiss.

The discussion before me on the motion has taken a very wide range, but from the pressure of business, it will be impracticable to write a full opinion and discuss all the points in detail, and I shall make this merely as a memorandum of my views.

The bill alleges in substance that the commissioner had revoked the plaintiff's license on the ground that some of the agents of the plaintiff had countersigned and issued policies of the plaintiff when those agents had not been licensed by the commissioner. There is attached to the complaint a copy of the proceedings before the commissioner, including the testimony taken and the order of the commissioner revoking the license. It appears from the complaint and the proceedings before the commissioner that the contest grew out of a decision of the commissioner to refuse to license agents operating either directly or indirectly in connection with banking interests. There are allegations in the bill and there was considerable evidence before the commissioner relative to the plaintiff's claim that it had the right to assume that the licenses would be issued to the particular agents in question, because application for their licenses had been duly made by the plaintiff and the fees therefor sent to the commissioner, and the further claim that those fees had not been returned and no formal notice given that the licenses would not be issued. I shall advert to these matters later.

The first position taken by the defendant is that this court has no jurisdiction of the bill, or, if it has jurisdiction, that from comity it should dismiss the bill and remit the parties to their remedies in the state court. In that connection, reliance is placed upon section 4065 of volume 3 of the Code of Laws of South Carolina of 1922, which provides that any order, ruling, or decision of the insurance commissioner in all matters either of law or discretion within the jurisdiction of his department shall be subject to review by certiorari or mandamus proceeding before any circuit judge or justice of the Supreme Court, which may be held at chambers or in open court upon thirty days' notice to the insurance commissioner. But this remedy is not an adequate remedy at law such as to prevent the equitable jurisdiction of the federal courts. Certiorari and mandamus are not available in the federal courts, and the rule is that in order for the remedy at law to be adequate so as to prevent a suit in equity in the federal courts, the remedy at law must be available in the federal courts. Southern Ry. v. Query et al. (D. C.) 21 F.(2d) 333, and cases cited.

The learned counsel for the defendant, however, have cited decisions by the Supreme Court of the United States, and some by the lower federal courts, which, it is contended, show that this court is either without jurisdiction, or, if it has jurisdiction, should not assume to interfere with the action of a state

officer, but should remit the parties to their remedies in the state courts. In deference to the earnestness with which these cases have been pressed upon the court, I have read them very carefully. I do not think it necessary to amplify this memorandum by discussing those cases and distinguishing them. It is sufficient to say that I am quite satisfied that they have no application to the case at bar. In the present case, there is diversity of citizenship. The jurisdictional value is present. There is no adequate remedy at law. It is shown that the plaintiff will suffer irreparable loss if the commissioner's order is enforced, and it is claimed (and justly so, as I shall show later) that the action of the commissioner in revoking the license was without authority of law. None of the cases that have been cited hold that in such a state of facts this court should refuse to entertain jurisdiction simply on the ground that the injunction is directed against a state officer and to that extent is a supposed interference with the functions of the state government. I am satisfied there is no case which makes such a ruling.

■ I shall not undertake to determine whether the plaintiff was justified in assuming that its agents would be licensed, and permitting certain of them whose licenses were not issued, to countersign and issue policies. The commissioner has found that these agents were not licensed and that the company sanctioned the issuance of these policies knowing that the licenses had not been issued, and that the retention of the fees and the circumstances of the case did not justify the plaintiff in assuming that the licenses would be issued. There was testimony before the commissioner to support these findings, and I shall not endeavor to go behind them; but in the view I take of the case, these matters are not determinative. My view is that under the bill of complaint there is presented for my decision the pure question of law whether the insurance commissioner has the authority by law to revoke a license which has been duly issued to a foreign insurance company, upon the ground that some of the agents of the company, who have been duly authorized and commissioned by that company, have countersigned and issued policies when they were not in fact licensed to do business as agents by the insurance commissioner. That question is to be determined of course by the statute law of South Carolina, and there is no decision of the state court upon the point.

There are several statutes which give the commissioner power to revoke licenses of insurance companies upon certain states of facts which are not presented here, and those statutes need not be considered.

Section 4133 of volume 3 of the Code of South Carolina 1922 provides that any company or insurer failing to comply with the terms of this article (namely, article 1 of chap. 48, being sections 4054 to 4133, inclusive) shall have its license suspended or revoked by the insurance commissioner.

Section 4064 of the same Code provides that "if the Commissioner is of opinion * * * that a company * * * has failed to comply with the law * * * he shall revoke, or suspend all certificates of authority," etc.

It is upon these two sections, that the commissioner must base his authority to revoke the license in question. I have examined all the sections of article 1 of chapter 48, and there is nothing in the bill of complaint or in the proceeding before the commissioner to show that the plaintiff has failed to comply with the terms of the article, unless it be section 4064. That section, as has already been stated, provides that the insurance commissioner may revoke the license of an insurance company when he finds that it has failed to comply with the law. It is upon this that the commissioner bases his ruling, namely, that the plaintiff has violated the law; that is, has failed to comply with it. The real question then is whether there is any duty resting upon an insurance company to obtain licenses for its agents, and whether it violates the law when one of its agents who is not duly licensed countersigns and issues a policy.

It is clear that the statutes of South Carolina prescribe both that an insurance company must obtain a license and that each agent must obtain a license. Section 4069 of the Civil Code of 1922 provides that "before doing business in this State for any insurance company or association, *each agent* shall procure from the Insurance Commissioner a license for which he shall pay one half-dollar as an annual department license fee." It also provides that "before issuing such license the Insurance Commissioner shall determine that the agent is a fit and proper person," and he is given power to revoke the license after thirty days' notice and examination, "whenever it shall appear that said agent has violated the law of this State, or has wilfully deceived or dealt unjustly with a citizen of this State."

It is manifest from this section that the duty of obtaining an agent's license rests, not upon the company, but upon the agent.

There is not a trace in any of the statutes upon the subject indicating that the Legislature intended to impose this duty upon the company; nor is there a trace of any intention that the license of the company to do business in the state might be revoked on the ground that an agent, who has not been licensed by the commissioner, has issued policies. It may be that it would be good policy to require foreign insurance companies, when they commission agents and authorize them to do business, to see that they first obtain licenses before issuing policies. But that is a question of policy for the Legislature to decide; and the Legislature has not, so far, decided to impose that duty upon insurance companies, and certainly has not given the commissioner any power to revoke a foreign company's license because of the failure of the agent to obtain his own license.

It is true that it has been the custom of this particular company and other companies to forward the fees, together with a list of its agents, to the insurance commissioner, and request that licenses be issued to them. But this is merely a custom and is not directed by any law.

The defendant lays much stress upon section 4072 of the Civil Code of South Carolina 1922, which provides that "it shall be unlawful for any insurance company doing business through agents in the State of South Carolina to write * * * any * * * insurance * * * except through or by duly authorized agent or agents of such insurance company or association residing and doing business in this State." But it is shown by the bill of complaint that the agents whose acts have been questioned by the commissioner were duly authorized by the company, and that they resided and did business in the state.

█ Much stress is also laid by the defendant upon the latter part of section 4072, which makes provision that agents must collect the full premium, and that agents who sign, "or insurance companies who may cause to be signed any policy * * * and fails to collect the full premium * * * and retain the proper commission which is due," may have their licenses revoked, etc. But that section has no application here, because there is no claim that proper commissions were not duly collected and retained by the agents. The fact that the insurance commissioner may be authorized in such a case to revoke the company's license, so far from indicating that he would have the power in this case, indicates to the contrary; for under the rule expressio unius exclusio alterius est,

there is a clear and strong inference that the power to revoke thus expressly given in such case must be deemed denied in other cases where not expressly given.

The defendant's counsel rely also on section 4090 of the Civil Code of 1922 for South Carolina. But this section clearly has no application to the present case. It simply provides that "no fire insurance company * * * incorporated under the laws of this State * * * shall make * * * any policy * * * of insurance of any kind * * * except after the said risk has been approved, in writing, by an agent who is a resident of this State, regularly commissioned by the company doing business in this State, who shall countersign all policies so issued, and receive the commission therein when the premium is paid, and the State shall receive the license fees required by law to be paid on the premiums collected for insurance on all property located in this State." There is absolutely nothing to show that this section was not complied with. The agents whose acts have been questioned were duly commissioned by the company, and there is no showing or claim that they failed in any of the things required by this section. The only failure that is claimed is that they failed to comply with section 4069, which requires agents to obtain a license from the commissioner. It seems to me that the learned counsel for the plaintiff have confused the commissioning of an agent with the licensing of an agent. The commission must be issued, not by the insurance commissioner, but by the company; and this was done. The agent's license must be issued of course by the commissioner; and this was not done; so that the question remains, as stated at the outset, whether the failure of an agent to obtain his license gives the commissioner power to revoke the license of the company itself.

██ Great stress has also been laid upon the fact that the plaintiff is a foreign corporation and cannot do business in the state except by permission of the state. But the foreign corporation, when its license has been granted, has the right to continue under that license, and not have the same revoked by an officer unless he is authorized by law to make that revocation. If the commissioner has no authority under the law to revoke the license on the ground claimed, then the fact that the plaintiff is a foreign corporation, and might have been denied for some reason originally the right to enter the state, cannot deprive the corporation of its rights under the license issued to it. But in addition to this, the

authority of the commissioner, if he has a right to revoke the company's license on the ground claimed, must be based upon the provisions of sections 4064 and 4069 of the Civil Code, and these sections are not confined to foreign corporations, but apply to domestic insurance companies as well. If the commissioner, under those sections, has the right to revoke the license of a foreign insurance company because its agents have written policies before obtaining their licenses, then he could, by the same token, revoke the license of any domestic insurance company whose agents likewise fail in their duty. In no aspect, therefore; can the fact that the plaintiff is a foreign corporation affect the decision of the question.

It is argued, however, that the commissioner has found as a fact that the plaintiff sanctioned the issuance of the policies by the unlicensed agents, knowing that their licenses had not been issued to them, and having no ground to believe that they would be. But this cannot affect the question of the power of the commissioner. The company and the agents, when they issued the policies in question, took the risk of that action and its legal consequences. They took the risk that the commissioner would take action as authorized by law for those acts of the agents; but they took no further risk. They took no risk of the license of the company being revoked, when the commissioner was not authorized by law to revoke on that ground. Whatever action the commissioner might take to punish either the company or the agents for those acts, for which the commissioner has authority of law, it would be entirely proper for him to take, and this court would not interfere therewith. But if he undertakes to punish those acts by an act beyond his power and for which he has no authority of law, then the courts must enjoin his action.

For these reasons, I think the motion to dismiss the bill of complaint must be denied, and a proper order will be entered accordingly.